No. 34,252

John Rogers, *Plaintiff*, v. The J. R. Oil and Drilling Company et al., *Defendants*. (George D. Perkins, Homer Cunningham, Etta Cutmyer, and The Producers Lumber Company, *Appellants*. Henry C. Bennett, Morris H. Cundiff, Clark C. Nye, and F. E. Wilhelm, *Appellees*.)

(89 P. 2d 847)

Opinion filed May 6, 1939.

*Ed Rooney*, of Topeka, *Francis Prosser, W. D. Jochems*, both of Wichita, *Ira C. Snyder, Roy A. Lathrop*, both of Manhattan, and *Edward E. Pedroja*, of Eureka, for the appellants.

*Glenn Porter, Getto McDonald, Dwight S. Wallace, William Tinker, Morris H. Cundiff*, all of Wichita, *John L. Gleason*, of Oklahoma City, Okla., and *C. H. Kohler*, of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

Allen, J.: In May, 1933, Clark C. Nye was appointed receiver of the J. R. Oil and Drilling Company. On December 30, 1936, his final report as receiver was filed, the receivership was closed and an order of discharge was entered. On February 9, 1938, the appellants filed a pleading in the same case, entitled "A motion and petition to vacate," and on August 1, 1938, an amended petition was filed. The appellees filed a motion to strike the amended motion and petition from the files for the following reasons:

"That said pretended motion and petition to vacate does not state facts sufficient to set aside the orders and judgments heretofore rendered in said cause and to vacate said judgment.

"That said pretended motion and petition to vacate does not state facts sufficient to constitute a cause of action in favor of said petitioners.

"That the facts alleged in said amended motion and petition to vacate make no allegation of facts showing any extrinsic fraud in the securing of said orders and judgments.

"That if said amended motion and petition to vacate alleges any facts whatever, the same are all intrinsic in said orders and final judgment and therefore state no allegations of facts to entitle the petitioners for the relief prayed for.

"Because said amended motion and petition to vacate do not allege any facts or charge any acts against these parties except such as are barred by the statute of limitations."

This motion was sustained by the trial court, and this appeal is from the order of the court sustaining the motion to strike.

The amended motion and petition to vacate is prolix, containing forty-four paragraphs and covering twenty-six pages of the abstract. The first two paragraphs of the petition allege:

"In the amended motion and petition to vacate George D. Perkins alleges that he is a creditor of defendant in the sum of $400; Homer Cunningham is a creditor of defendant in the sum of $65; Etta Cutmyer is a creditor of defendant in an amount much greater than $1,000; that all of said claims are bona fide claims; that no part of any one of said claims has been paid, although ample funds have been at all times available for their payment.

"That at some time prior to April 1, 1932, Clark C. Nye, John Rogers, now deceased, F. E. Wilhelm, one George P. Smith, and one Annie B. Smith entered into a conspiracy to unlawfully and wrongfully acquire to themselves and to their associates, which associates are unknown to the movants and petitioners but well known to all of the defendants, for little or no consideration, properties of great value belonging to the debtor corporation; that said conspiracy included divers means and associates well known to said conspirators but unknown to these movants and petitioners, except as later wrongful acts have disclosed them; that said conspiracy included a trusteeship of the debtor's property vested in F. E. Wilhelm, through which he was to acquire wrongfully certain assets; that his acquisition of the same was to be followed by a receivership wrongfully created, and a subsequent bankruptcy proceeding by the said John Rogers, now deceased, and a suit in the above court to take the stock of the corporation from its rightful owners in order to give to said contemplated unlawful and wrongful acts a color of validity by order of court."

It was alleged that in 1932 Wilhelm acquired assets of the corporation; that John Rogers, "pursuant to and on behalf of said conspiracy," by force and violence acquired the stock of one D. F. Cutmyer, and forced his resignation as secretary and treasurer of the corporation; that Wilhelm as trustee wrongfully acquired all the property of the corporation; that thereafter and prior to May, 1933, the appellees Morris H. Cundiff and Henry C. Bennett and others

joined the conspiracy and approved all the acts done prior thereto; that the conspirators brought a receivership proceeding and secured the appointment of Clark C. Nye as receiver. Paragraph 7 of the petition reads as follows:

"That the said Clark C. Nye qualified, became receiver for defendant corporation, and at once entered into an understanding with said Henry C. Bennett and Morris H. Cundiff to continue the said conspiracy begun by John Rogers and others, and to defeat the claims of creditors and other interested parties as their interest might appear, for the purpose of securing as much of the assets of the defendant corporation for themselves as possible, and for the further *purpose of divesting the stockholders of said corporation* of all residuary funds and rights on final distribution; that in pursuance of said conspiracy, the said Clark C. Nye, pretending to act as said receiver and being aided and abetted by his said coconspirators, misinformed and deceived the court at all times and mismanaged the affairs of the receivership for what he believed to be their own profit, and concealed from the court the true financial condition of said defendant corporation, and thereby procured the court to issue the following orders, to wit (italics inserted):

"(a) Order directing receiver to accept reconveyances of property, filed herein on the 25th day of May, 1933.

"(b) Order approving report of F. E. Wilhelm, filed herein on the 20th day of October, 1934.

"(c) Order of revivor, filed herein September 8, 1936.

"(d) Order setting date for hearing application of receiver for direction to sell assets, filed herein September 9, 1936.

"(e) Order setting date for hearing application of receiver and receiver's attorney for allowance of expenses and compensation, filed herein on September 9, 1936.

"(f) Journal entry fixing time for hearing, filed herein on September 29, 1936.

"(g) Order directing receiver to accept bids for the sale of property, filed herein on September 29, 1936.

"(h) Journal entry of order as to priority of claims, filed herein on September 29, 1936, insofar as the same in any manner approves or authorizes an allowance for 'cost and expense of the administration of the receiver,' 'the receiver's certificates in the sum of $6,600, and the expense and fees of receiver's attorney.'

"(i) Order continuing proceedings for the sale of trust property, filed herein on October 26, 1936.

"(j) Order continuing hearing for accepting bids on sale of property, filed herein on November 10, 1936.

"(k) Order setting date of hearing on application to accept bid and confirmation of sale of assets, filed herein November 10, 1936.

"(l) Order for the full allowance of receiver's expenses and compensation and for fees and expenses of his attorneys, filed herein on November 17, 1936.

"(m) Order directing the acceptance of bid of H. C. Bennett for the purchase of assets of J. R. Oil and Drilling Company, and confirmation of sale, filed herein on November 17, 1936.

"(n) Approval of report of receiver and order of discharge, filed herein on the 30th day of December, 1936.

"All of which orders are void and should be vacated, set aside, and held for naught."

It was further alleged that after the appointment of Nye as receiver the appellee Wilhelm, in partial compliance with an order of the court, made partial assignments of the property in his answer to Nye as receiver, at the time "withholding and concealing from the said court with the full knowledge and approval of his coconspirators the most valuable of said properties and assets" held by him as trustee; that the properties so withheld were worth more than $100,000; that the conspirators collected large sums of money from oil runs on properties belonging to the corporation, and "in furtherance of said conspiracy" have concealed such collections from the court.

It was alleged that on May 25, 1933, the court ordered Nye, as receiver, to accept from Wilhelm, trustee, the reconveyance of all the corporation property held by him as trustee; that Nye "with the full knowledge and approval of his coconspirators" accepted less than half of the property of the corporation in full satisfaction of such order.

Paragraphs 13, 14 and 15 of the petition allege that Nye, the receiver, "in furtherance of said conspiracy," promoted the drilling of an oil well, allege a fraudulent purpose in so doing, and that such well cost the receivership large sums of money.

The petition details many other transactions connected with the receivership, charging that such acts were wrongful and were "in furtherance of said conspiracy." The final paragraph and prayer of the petition reads as follows:

"That this entire receivership was conducted by said conspirators as alleged without the knowledge of the court and for the purpose of using it as a link in a chain of wrongful practices, all intended to divest the rightful stockholders of defendant corporation and its creditors of the right, title, and interest in and to as much of the assets of said corporation and sums due said creditors, as possible; that said chain of practices included a fraudulent title to the stock of said corporation as a matter of precaution, so that in case the court became informed as to the property rights of defendant corporation and the receivership should close with large residuary assets, said conspirators could claim the same as stockholders of defendant herein.

"Wherefore, movants and petitioners pray that the following orders of this court and all instruments herein that depend upon them, to wit (here follows same orders as in paragraph 7 above quoted): be declared void, canceled, set aside, vacated, and held for naught; that a new receiver be appointed by this

court, and that an accounting with Clark C. Nye, as former receiver, and Henry C. Bennett, as assignee, shall be had, and that all rights and interests and obligations of all parties hereto shall be settled according to law and equity after said accounting, and the receivership thereupon settled up as shall seem meet and equitable thereafter."

Did the court commit error in sustaining the appellees' motion to strike the amended motion and petition? Paragraph 1 of the petition does not state whether the petitioners are simple contract creditors or whether they are judgment creditors. If appellants are simple contract creditors they would not, under the settled rules of equity, have any standing to maintain an independent action. (*Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371, 37 L. Ed. 113, 14 Sup. Ct. 127.) It will be observed that it is not alleged that the appellant, the Producers Lumber Company, has any claim whatsoever. As to the other appellants, the petition fails to set up any matter of fact from which the court can determine whether or not said parties, or any of them, are creditors of the defendant corporation. The allegations are mere conclusions. However, it is not necessary to rest our decision upon the incapacity of the appellants to maintain the action.

We think the action of the court in sustaining the motion to strike must be sustained upon the following grounds:

1. In *Rizer v. Geary County*, 58 Kan. 114, 48 Pac. 568, the first paragraph of the syllabus reads:

"Wrongful acts or omissions in pursuance of a fraudulent conspiracy, and not the conspiracy itself, constitute a cause of action; and the statute of limitations begins to run from the time of such acts or omissions, if then known to the injured party, and not from the time of his discovery of such conspiracy."

In *Bohn Mfg. Co. v. Hollis*, 54 Minn. 223, 55 N. W. 119, 21 L. R. A. 337, 40 Am. Rep. 319, the court said:

"The gist of a private action for the wrongful act of many is not the combination or conspiracy, but the damage done or threatened to the plaintiff by the acts of the defendants. If the act be unlawful, the combination of many to commit it may aggravate the injury, but cannot change the character of the act." (p. 234.)

In the recent case of *Reynolds v. Armour & Co.*, 149 Kan. 460, 87 P. 2d 530, this court had under consideration the sufficiency of a petition which attempted to charge a conspiracy. Paragraph 1 of the syllabus reads:

"A petition which charges the legal conclusion that two defendants conspired, but which fails to plead any facts charging directly, or from which it

may be fairly inferred, that as between them there was any concerted action, or any act on the part of the second defendant that if plaintiff did not participate in an insurance plan he should not keep his employment with the first defendant, does not state a cause of action against the second defendant."

In *Stoner v. Wilson,* 140 Kan. 383, 36 P. 2d 999, it was held:

"The mere charging of a conspiracy, without stating the facts and circumstances which warrant recovery against the claimed conspirators, is not sufficient, and in order that the petition state a cause of action the acts of the parties from which it follows or may be inferred that there was a conspiracy must be alleged as well as the facts, showing that as a result the plaintiff suffered damages for which he is entitled to recover."

Measured by the rules established in the foregoing cases, the petition before us fails to state a cause of action. The allegations of fraud and conspiracy are of the most general character, and are as broad as language can make them. In *Ambler v. Choteau,* 107 U. S. 586, 27 L. Ed. 322, 1 Sup. Ct. 556, the court, by Waite, C. J., said:

"The words 'fraud' and 'conspiracy' alone, no matter how often repeated in a pleading, cannot make a case for the interference of a court of equity. Until connected with some specific acts for which one person is in law responsible to another, they have no more effect than other words of unpleasant signification. While in this case the offensive words are used often enough, the facts to which they are applied are not such as to make the defendants answerable to the complainant for the damages and other relief he asks." (p. 591.)

See, also, *L. L. & G. Rld. Co. v. Comm'rs of Douglas Co.,* 18 Kan. 169; *K. P. & W. Rld. Co. v. Quinn,* 45 Kan. 477, 25 Pac. 1068; *State, ex rel., v. Williams,* 39 Kan. 517, 18 Pac. 727; *Ladd v. Nystol,* 63 Kan. 23, 64 Pac. 985; *Dowell v. Railway Co.,* 83 Kan. 562, 112 Pac. 136; *Federal Reserve Life Ins. Co. v. Gregory,* 132 Kan. 129, 294 P. 2d 859.

2. But if we assume the allegations of conspiracy and fraud sufficient to state a cause of action, appellants are confronted with the further question: Is the fraud so alleged intrinsic fraud as heretofore defined by this court (*Plaster Co. v. Blue Rapids Township,* 81 Kan. 730, 106 Pac. 1079; *Huls v. Gafford Lumber & Grain Co.,* 120 Kan. 209, 243 Pac. 306; *Potts v. West,* 124 Kan. 815, 262 Pac. 569; *Putnam v. Putnam,* 126 Kan. 479, 268 Pac. 797; *Fry v. Heargrave,* 129 Kan. 547, 283 Pac. 626; *Brenneisen v. Phillips,* 142 Kan. 98, 45 P. 2d 867), or is such fraud so charged extrinsic and collateral? There is no allegation in the petition that the appellants were by any fraud or deception prevented from presenting their claims while the receivership was pending; no allegation that they were denied

a hearing by the receiver or the court; no allegation that the fraud is newly discovered; no allegation that they were not fully aware of such alleged fraud during the life of the receivership and at the time the various orders and judgments were rendered. On the contrary, the record shows that one of the appellants, Etta Cutmyer, who verified the petition in this case, was represented by counsel in such proceedings. We quote from a part of the order authorizing the receiver to receive bids for the sale of the property:

"Now on the 24th day of September, A. D. 1936, this being a regular term day of the April, 1936, term of the above-entitled court, this cause coming on to be heard by the court without a jury on the application of the receiver for an order authorizing him to receive bids for the sale by him of the property of the trust herein, and the receiver appearing in person and by his attorneys of record and it appearing that the receiver has given notice of the hearing of the application upon all of the creditors of the J. R. Oil & Drilling Company and of the receiver herein, by mailing notice thereof to each of said creditors on September —, 1936, and the Bovaird Supply Company appearing by its attorneys W. N. Banks; Black, Sivalls & Bryson, and Federal Supply Company appearing by its attorney F. S. Simmons; Tretolite Company appearing by its attorney Paul H. White; Etta Cutmeyer appearing by her attorneys Ebright & Smith; Ortmyer Lumber Company appearing by its attorney, Dale Kidwell, and no other creditor appearing either by its attorney or in person, the court, after discussion and being duly advised, finds and adjudges that due and proper notice of the hearing has been given by the receiver."

The record shows the order was approved by the various attorneys whose names appear in the order.

Upon this record, with what show of reason can appellants assert they have not had their day in court? The record shows that the receiver mailed notice to the creditors that he had made application to the court for an order to sell the assets of the corporation, such notice giving the date and hour of the hearing. Appellants do not deny that such notice was duly received by them, but in paragraph 25 of their petition assert the notice "was not sufficient in fact or in law, failing entirely to notify creditors with the real purpose of the sale of the assets of defendant corporation, and entirely failing to give notice that the said sale was to be held by the receiver in furtherance of a planned conspiracy, and in furtherance of a fraud upon the court." It cannot be denied, then, that the appellants had notice not only of the pendency of the receivership proceedings but of the day and hour the application for the orders would be heard, nor that they had reasonable opportunity to appear and defend their rights. It cannot be asserted that they were

denied the privilege of appearing before a fair and impartial tribunal to have their claims adjudicated. Appellants were not denied due process of law. The law of the land does not guarantee that a defeated litigant should have a second trial.

We are clear the fraud charge is intrinsic as often defined by this court, and for that reason the plaintiff is not entitled to the relief prayed for in this action.

After a painstaking examination of the entire record we find no basis for the charge of conspiracy so stridently made against these appellees.

The judgment of the trial court is affirmed.